This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42493**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ADRIAN PAUL SANCHEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Kellie Garcia, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** According to Defendant Adrian Sanchez's recorded statements to a police detective, Defendant encountered Jesus Lopez (Victim) in a parking lot. Victim got in Defendant's car and asked for a ride in exchange for purchasing Victim's gun. Defendant agreed to give Victim a ride because Victim had the gun in his lap and Defendant was afraid he would shoot him. As Defendant drove, Victim eventually ordered Defendant to pull over at gunpoint, get out of the car, and give him Defendant's

key fob and other belongings. Defendant stopped the car and was getting out when Victim moved into the driver's seat and shot at but missed Defendant. Defendant then used his own gun to shoot and kill Victim while Victim was sitting in the driver's seat. Defendant pulled Victim out of the car while Victim was bleeding heavily but still alive, laid Victim in the road, and drove away with Victim's belongings—including Victim's gun. Defendant later cleaned and sold his car, sold both his and Victim's guns, and disposed of Victim's other belongings. A jury found Defendant not guilty of felony murder and second degree murder, but guilty of the lesser included offense of voluntary manslaughter, as well as armed robbery and two counts of tampering with evidence—one related to Defendant's car and the other to his gun.

**{2}**     On appeal, Defendant makes three arguments: (1) the State presented insufficient evidence to sustain the armed robbery conviction; (2) the State presented insufficient evidence to sustain the tampering with evidence conviction related to Defendant's car; and (3) if we affirm the armed robbery conviction, the convictions for voluntary manslaughter and armed robbery violate the prohibition against double jeopardy. Unpersuaded, we affirm.

## DISCUSSION

### I.     Armed Robbery Conviction

**{3}**     The jury was instructed on the following relevant elements of armed robbery: (1) Defendant "took and carried away a wallet and/or firearm from [Victim] or from [Victim]'s immediate control intending to permanently deprive [Victim] of the property; the property had some value;" (2) Defendant "was armed with a firearm;" and (3) Defendant "took the wallet and/or firearm by force or violence." *See* NMSA 1978, § 30-16-2 (1973); UJI 14-1621 NMRA. Defendant argues that insufficient evidence was presented to support his conviction for two reasons. First, the State did not prove that Defendant intended to rob Victim. Second, the State did not allege any other "force or violence" aside from the shooting as the "lever" by which Victim's property was taken, which Defendant contends conflicts with the jury's finding as part of its voluntary manslaughter verdict that Victim's death was not caused during the commission of an armed robbery. Reviewing the sufficiency of the evidence under our established deferential standard of review, we are not persuaded by Defendant's arguments. *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 ("The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (alteration, internal quotation marks, and citation omitted)).

**{4}**     As to the intent requirement, Defendant argues that the State presented no evidence of a plan to rob Victim. However, the State was not required to prove that Defendant had a plan; the State was required to prove that Defendant intended to permanently deprive Victim of his property. The jury heard evidence that Victim showed Defendant his gun prior to getting in Defendant's car and, after getting in the car, offered to sell his gun to Defendant in exchange for a ride. Victim put the backpack he was

carrying in the backseat. Later, after shooting Victim, Defendant saw Victim's gun in the driver's seat. Defendant pulled Victim out of the car and drove away with Victim's gun and backpack. Defendant later sold Victim's gun and disposed of the backpack and its contents, including a wallet. "[I]ndulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict," *id.*, we believe a rational jury could have found this evidence sufficient to prove Defendant's intent. *See State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056; *see also State v. Lopez*, 2011-NMCA-071, ¶ 7, 150 N.M. 34, 256 P.3d 977 (holding that "circumstantial evidence can be sufficient to support a finding of intent" to commit robbery). Defendant's awareness of the presence of Victim's belongings in the vehicle and removal of Victim's body, but not the belongings, from the car before driving away is sufficient circumstantial evidence to support a finding that Defendant intended to permanently deprive Victim of his property.

{5} Next, Defendant argues that the only "force or violence" the State alleged was the shooting as the "lever" by which the property was taken, *see State v. Baca*, 1971-NMCA-142, ¶ 5, 83 N.M. 184, 489 P.2d 1182 (holding that the use or threatened use of force or violence "must be the lever by which the thing of value is separated from the person or immediate control of another"), and that the State's reliance on the shooting conflicts with the jury's finding that Victim's death was not caused during the commission of an armed robbery. However, the jury instructions did not specify what force the jury had to find in order to render its general armed robbery guilty verdict, and so long as "a jury verdict in a criminal case is supported by substantial evidence, the verdict will not be disturbed on appeal." *State v. Johnson*, 2026-NMCA-036, ¶ 9, 585 P.3d 1057 (internal quotation marks and citation omitted), *cert. denied* (S-1-SC-41255, Feb. 9, 2026); *cf. State v. Duttle*, 2017-NMCA-001, ¶ 15, 387 P.3d 885 ("A general verdict does not identify which theory the jury relied upon in returning the guilty verdict."). The jury heard evidence that Defendant pulled Victim out of the car and left Victim in the street before driving away with Victim's belongings. This evidence is sufficient to support a finding that Defendant separated Victim from his property by force or violence. *See Duttle*, 2017-NMCA-001, ¶ 33 ("The general verdict will not be disturbed if there is substantial evidence in the record to support at least one of the theories of the crime presented to the jury."). Importantly, "[t]he amount or degree of force is not the determinative factor." *See State v. Martinez*, 1973-NMCA-120, ¶ 4, 85 N.M. 468, 513 P.2d 402 (recognizing that "[e]vidence of jostling or causing the victim to fall as property is taken [suffices] to establish the use of force"). What matters instead is whether force was the lever used to separate the victim from their property, *id.*, and here the evidence supported a reasonable inference that Defendant separated Victim from his property by removing him from the car and then driving away with his property. *Cf. State v. Pitts*, 1985-NMCA-045, ¶¶ 16-18, 102 N.M. 747, 700 P.2d 650 (concluding that evidence of force sufficed when the defendant had grabbed victim, moved victim into a jail cell, and locked victim inside before taking money). We conclude that the evidence suffices to support Defendant's conviction for armed robbery.

## II.     Tampering with Evidence Conviction

**{6}** The evidence sufficed to prove the following relevant elements of tampering with evidence: (1) Defendant "destroyed, changed, hid or placed a car" and (2) "[b]y doing so, [D]efendant intended to prevent the apprehension, prosecution or conviction of [Defendant] for the crime of felony murder, second degree murder, voluntary manslaughter or armed robbery." *See* NMSA 1978, § 30-22-5 (2003); UJI 14-2241 NMRA. Evidence was presented that Defendant cleaned blood out of the seat of his car shortly after the incident; found bullet fragments in the car and threw them away; drove the car for some time; told a friend that he was going to have his car detailed because there was still a puddle of blood under the seat; and ultimately sold the car in another state. Viewing the evidence "in the light most favorable to the guilty verdict, [and] indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict," *Cunningham*, 2000-NMSC-009, ¶ 26, this evidence supports a reasonable inference that Defendant acted with the intent to prevent his apprehension, prosecution, or conviction. *See State v. Duran*, 2006-NMSC-035, ¶ 14, 140 N.M. 94, 140 P.3d 515 (holding that, to uphold a tampering with evidence conviction, "there must be sufficient evidence from which the jury can infer: (1) the specific intent of the [d]efendant to disrupt the police investigation," which can be "inferred from an overt act of the defendant," and "(2) that [the d]efendant actively destroyed or hid physical evidence" (internal quotation marks omitted)). Defendant cleaned the car, which destroyed physical evidence of blood and bullet fragments, and sold the car out-of-state; both acts supported a reasonable inference of a specific intent to disrupt the police investigation. Such an inference is also supported by evidence that Defendant sent a message to a friend sharing an Albuquerque Journal article that indicated APD was investigating the murder, and that Defendant then asked his friend to have someone call the police to give a false eyewitness account. Defendant argues that he had a reason for cleaning and selling his car other than preventing his apprehension, prosecution, or conviction—his own statements that the blood was "gross" and the car "smelled bad"—but the jury was free to reject Defendant's version of events. *See State v. Cabezuela*, 2011-NMSC-041, ¶ 45, 150 N.M. 654, 265 P.3d 705. We conclude that the evidence suffices.

### III. Double Jeopardy

**{7}** Finally, Defendant raises a double-description double jeopardy claim as to his convictions for armed robbery and voluntary manslaughter, arguing that we should vacate the voluntary manslaughter conviction as the lesser felony. *See State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289 (explaining that, in a double-description claim, "a single act results in multiple charges under different criminal statutes"). Reviewing this issue de novo, *see State v. Vasquez*, 2024-NMCA-020, ¶ 6, 542 P.3d 806, we are not persuaded by Defendant's argument.

**{8}** To analyze double-description claims, "we use a two-part test to first evaluate whether the conduct underlying the offenses is unitary and second determine whether the Legislature intended to create separately punishable offenses." *Id.* (alteration, internal quotation marks, and citation omitted). Because we conclude that the conduct was not unitary, we do not reach the second step of the analysis. *See State v. Begaye*, 2023-NMSC-015, ¶ 13, 533 P.3d 1057.

**{9}**     The question in a unitary conduct analysis is "whether the same criminal conduct is the basis for both charges." *Vasquez*, 2024-NMCA-020, ¶ 7 (internal quotation marks and citation omitted). We look for "indicia of distinctness between the acts at issue" and consider "the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury," as well as "whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Id.* ¶ 8 (internal quotation marks and citations omitted). Defendant argues that the State's theory as articulated to the jury during closing arguments was that the shooting "was one ongoing attack *during* an armed robbery" and therefore the conduct underlying both convictions was unitary. The State contends that the armed robbery and the voluntary manslaughter were separated by time, location, and a series of intervening events such that the manslaughter was completed before the robbery.

**{10}**     We begin with the jury instructions. The relevant elements of the voluntary manslaughter instruction are that Defendant (1) killed Victim; (2) "knew that his acts created a strong probability of death or great bodily harm" to Victim; (3) "did not cause the death of [Victim] during the commission of armed robbery;" (4) "acted as a result of sufficient provocation;" and (5) "did not act in self defense." *See* NMSA 1978, § 30-2-3(A) (1994); UJI 14-221A NMRA. The relevant elements of the armed robbery jury instruction are that Defendant (1) "took and carried away a wallet and/or firearm from [Victim] or from [Victim]'s immediate control intending to permanently deprive [Victim] of the property; the property had some value;" (2) "was armed with a firearm;" and (3) "took the wallet and/or firearm by force or violence." *See* § 30-16-2; UJI 14-1621. As already noted, the jury did not find Defendant guilty of felony murder, which would have required a finding that Defendant "caused the death of [Victim] during the commission of armed robbery."

**{11}**     The jury's verdicts pursuant to these instructions are particularly relevant in light of Defendant's argument about the State's theory at trial. The State's rebuttal to Defendant's closing argument at trial reflected a theory that the same act completed the killing and the robbery. First, while explaining the felony murder charge, the State told the jury that Defendant was "trying to rob [Victim] of [Victim's] gun," implying that the armed robbery was the predicate felony. The State then argued, "[Defendant]'s focused in on that gun the entire time. He gets [Victim] into his car. He finishes [Victim] off. He takes that gun from [Victim] and he goes and sells it. He intended to kill [Victim] and he robbed [Victim] of that firearm." The State also told the jury that "what happened here, in the State's theory, is [Defendant] meant to kill and take . . . that firearm [from Victim]." Most tellingly, in walking the jury through the elements of armed robbery and referencing the element of taking Victim's property "by force or violence," the State asked "What's more force or violence than killing someone?"

**{12}**     Defendant contends the conduct is therefore unitary because "the jury was instructed and the State's theory focused on the shooting as the force necessary to complete the armed robbery." Defendant argues that this case is similar to *State v. Reed*, 2022-NMCA-025, ¶¶ 13-14, 510 P.3d 1261, in which this Court concluded that the defendant's convictions for armed robbery and aggravated battery with a deadly

weapon were based on unitary conduct. We perceive a legally significant distinction between *Reed* and this case. In *Reed*, the jury instruction for aggravated battery did not require the jury to find the use of force occurred at any particular time in relation to the armed robbery. *See id.* ¶ 13. But in Defendant's case, the voluntary manslaughter instruction required the jury to find that Defendant "did not cause the death of [Victim] during the commission of armed robbery." And although the State's trial theory is part of the unitary conduct analysis, *see Vasquez*, 2024-NMCA-020, ¶ 12, the State's rebuttal argument was focused on an element of the felony murder charge: that Defendant "caused the death of [Victim] during the commission of armed robbery." But the jury did not find Defendant guilty of that offense. Instead, the jury found Defendant guilty of the lesser-included offense of voluntary manslaughter, and we therefore must remain focused on whether there are sufficient indicia of distinctness between the acts that constituted voluntary manslaughter and those that constituted armed robbery, which "depends to a large degree on the elements of the charged offenses and the facts presented at trial." *Id.* ¶ 8 (internal quotation marks and citation omitted); *see also id.* ¶ 24 (explaining the differences between the unitary conduct and legislative intent analyses and the role of the State's theory in each).

**{13}** We conclude that there are sufficient indicia of distinctness here. *See Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624 (enumerating six factors for determining whether acts are distinct); *see also State v. Phillips*, 2024-NMSC-009, ¶ 38, 548 P.3d 51 (explaining that we apply the *Herron* factors in the unitary conduct analysis of double-description claims). The record does not make clear the temporal proximity of the acts that amounted to manslaughter and robbery, but Defendant argues that "the shooting happened in a matter of seconds," whereas the State argues that a series of intervening events separated the acts temporally. *See Herron*, 1991-NMSC-012, ¶ 15 (identifying the temporal proximity of acts, the existence of an intervening event, and the sequencing of the acts as three of the factors to be considered in analyzing whether the conduct was unitary). According to Defendant's police interview, after Defendant shot Victim, Defendant ran across the street. He then returned to the car, seeing Victim "gushing blood" and Victim's gun still in the driver's seat. He yelled at people nearby on the street to call the police and said that Victim had tried to rob him. Defendant pulled Victim from the car and placed him on the street, wiped blood off the driver's seat, and then drove away. The sequencing of Defendant's acts could allow a reasonable jury to infer that Defendant completed the act of voluntary manslaughter when he shot Victim because there was testimony that Victim's cause of death was gunshot wounds; then—after the intervening events described above—Defendant began and completed the armed robbery when he physically separated Victim from his property. *See State v. Lorenzo*, 2024-NMSC-003, ¶ 10, 545 P.3d 1156 (explaining that armed robbery is not complete upon the threatened use of force but rather is complete when the defendant takes possession of the victim's property).

**{14}** The State also argues that Victim's location distinguishes the acts, as Victim was inside the car when Defendant shot him, completing the manslaughter under the State's view, and then Victim was laid on the street outside of the car when Defendant separated Victim from his property, completing the robbery under the State's view. *See*

*Herron*, 1991-NMSC-012, ¶ 15 (identifying the victim's location during each act as another factor to consider). Although Victim may not have been moved a great distance from the driver's seat of the car to the street near the car, the change in location is significant because it enabled Defendant to drive away with Victim's property.

**{15}**     While a single victim can, in some circumstances, suggest unitary conduct, *see id.*, it is not a dispositive fact, *see, e.g.*, *State v. Lovato*, 2026-NMCA-059, ¶¶ 20-23, 589 P.3d 1078 (concluding that the defendant's conduct toward one victim was not unitary), *cert. denied* (S-1-SC-41393, May 13, 2026), and in this case other factors establish that the conduct was not unitary. *See Phillips*, 2024-NMSC-009, ¶ 13 ("[N]o *Herron* factor is dispositive, but instead . . . all factors should be considered together in light of the facts and circumstances of each case."). Defendant argues that his intent in shooting Victim, "as evidenced by his conduct and utterances," *Herron*, 1991-NMSC-012, ¶ 15 (identifying the defendant's intent as another factor), was to defend himself from Victim. After the shooting, Defendant asked people who were nearby to call the police and said that Victim had just tried to rob him. Still, Defendant then removed Victim from his car but did not remove Victim's belongings, including Victim's gun that was in the same seat as Victim. Under these circumstances, a reasonable jury could infer that Defendant's intent shifted from responding to a provocation when he shot Victim to permanently depriving Victim of his property when he separated Victim from the property.

**{16}**     Having considered the indicia of distinctness, we conclude that the jury "reasonably could have inferred independent factual bases for the charged offenses." *Vasquez*, 2024-NMCA-020, ¶ 8 (internal quotation marks and citation omitted). Because we conclude the conduct was not unitary, we hold that there is no double jeopardy violation and we do not reach the legislative intent part of the test. *See Lorenzo*, 2024-NMSC-003, ¶ 5.

**CONCLUSION**

**{17}**     We affirm.

**{18}   IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**KRISTOPHER N. HOUGHTON, Judge**